## R. D. Shepherd v. Mark Phillips & Co.

It will be presumed, unless the contrary appear, that all the parties to an agreement had knowledge of their legal rights; where, therefore, there are ambiguities and conflicting stipulations in the agreement, and one party claims the waiver of a legal right by the others, in his favor, the ambiguity will be construed against the party claiming the benefit; for it was incumbent on him to have given such explanations, at the time of entering into the agreement, as would have prevented the doubt.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *A. K. Josephs*, for plaintiff. *E. Briggs*, for defendant. By the court: (*Slidell*, J., absent.)

Rost, J. On the 20th May, 1846, the following agreement was entered into by the parties to it:

"It is hereby agreed between the undersigned, mortgage creditors of the Orleans Cotton Press Company, for the following sums, viz: *R. D. Shepherd*, four judgments in Fifth District Court, for about $205,000; *J. Y. de Egana*, one judgment in Criminal Court, for about $36,000; *John Slidell*, one judgment in Commercial Court, for about $15,000; *Mark Phillips*, one judgment in Commercial Court, for about $20,000; *Sam'l Nicholson*, one judgment in Commercial Court, for about $6,000, and that execution shall be issued on said judgments, and said *R. D. Shepherd* is hereby authorized and empowered to purchase at the sheriff's sale, for the account of the undersigned, in his own name, all the mortgaged property described in the several acts, and which is bound for the payment of the above claims, to be held and disposed of by him for their account, and each of the undersigned is to be interested in said purchase in proportion to the amount of his claim; and, to the end aforesaid, the undersigned do further authorize and empower the said *R. D. Shepherd* to raise their several mortgages and judgment claims now due, so as to meet the cash payment required

at the sale to be made as aforesaid; and in the event of a resale to a profit to said *R. D. Shepherd*, which resale, at profit, he is hereby authorized to make, such profit shall be ratably divided as aforesaid; and should any future difficulty arise between the parties as to the partition of said property or its proceeds, in relation to any *priority* of lien or mortgage, that may be claimed by one or more of them over the other, such difficulty shall be made the subject of an amicable suit, to be submitted, by consent, to the Supreme Court for decision. It is well understood, that the said *R. D. Shepherd* should not bid for the property, up to the whole amount of the claims of the undersigned; and if the property is bought in for less at the sale, yet, as between the undersigned, it is to be considered as having been purchased at the amount of the entire claims, so as to leave each one interested in proportion to his claim, and to avoid, as far as possible, between themselves, any question of priority of rank between them. In faith whereof, they have hereunto signed their names, this 20th day of May, 1846. This agreement, as soon as signed, to be deposited with *H. B. Cenas, Esq.*, notary public, for safe keeping. Signed: *R. D. Shepherd; Mark Phillips* by *A. & J. Dennistoun & Co.*, agents; *J. Y. de Egana; John Slidell*, for *H. C. Cammack; Sam'l Nicholson.*"

Under this agreement *R. D. Shepherd* purchased, in his own name, the property to which it refers, for the price of $270,000, which, after deducting costs and arrears of taxes, left the sum of $266,744 55, subject, according to the sheriff's return, to such distribution as the court might make between the creditors of the company. The plaintiff has since had the management of the property, and has purchased the claim of *Phelps, Dodge & Co.*, the party represented in the agreement by *Sam'l Nicholson*, for the common benefit of the other parties to that agreement. He has now in his hands, for distribution among the shareholders, a sum of $15,541 27, proceeding from the rents of the property.

He has made a distribution of it among the shareholders, on which the dividends are in proportion to the amount of their respective claims, without regard to the priority which some of those claims have over others, but as his construction of the agreement is at variance with that of the other parties, he has instituted this proceeding for the purpose of ascertaining the proper division of the property and its revenues among the shareholders.

The latter have appeared, and oppose the distribution made, on the following grounds: That the stipulation in the agreement, that the price should be considered as between themselves, the amount of their claims had necessarily reference to those claims as recognized and settled in the form provided in the agreement itself. That by a decree of the Supreme Court, rendered on a rule to which all the parties hereto were also parties, these several claims were finally liquidated, and it was decreed, that the holders of the bonds of the first series were entitled to be paid in preference to the holders of the second series, whose mortgage had never been reinscribed. That under the judgment in that case, the holders of the bonds of the second series were entitled to a dividend of 29¾ per cent on the sum of $23,902 24, the balance of the purchase money after paying the claims to be declared to be of higher privilege; that of the amount claimed by the plaintiff, $56,657 63 is claimed for bonds of the second series, and, for which, under the decree, he is only entitled to the sum of $16,855 44. That the decree of the Supreme Court finally settled the interest of the parties, and forms *res judicata*.

They pray that their shares in the property and its rents, be fixed according to the principles of that decree.

The case was submitted to the district judge, without argument, and the judgment rendered was in conformity with the prayer of the petition. The defendants have appealed.

The different stipulations of the agreement, cited on both sides, seem to be in direct conflict with each other; and if, in endeavoring to construe it, we should fail to reach the common intent of the parties, they alone will be to blame for having created a state of things to which rules of law cannot be applied with any degree of certainty.

The stipulations upon which the plaintiff relies, seem to imply a waiver of any right of priority by the purchasers. But if a waiver was intended, why was it not expressed in the act. So far from this being the case, it is stipulated, that should any difficulty arise between the parties, in relation to any priority of lien or mortgage that may be claimed by one or more of them over the others, such difficulty shall be made the subject of an amicable suit, &c.; and, further, the purchase shall be considered as having been made for the whole amount of the claims of the purchasers, to avoid, as far as possible between themselves, any question as to priority of rank. This expressly reserves the question of priority, which the other stipulations seem to waive, and hence the difficulty which the case presents.

It is not pretended that the agreement was entered into under the influence of any error of law or fact, by any of the parties to it. I must, therefore, take it for granted, that they were all apprised of their legal rights, and that the plaintiff had knowledge that the claims of the defendants were entitled to the preference over so much of his own, as rested upon bonds of the second series. He now insists, that the agreement is a waiver of the right of priority, made by the other parties, for his benefit. Under those circumstances, I am of opinion that it was incumbent upon him to have given such explanations, at the time, as would have prevented doubt or ambiguity; and, as he failed to do so under the express provision of article 1953 of the Civil Code, the construction most favorable to the defendants should be adopted.

The purchase was made on the 29th June, 1846. On the 3d of July following, the counsel of plaintiff, on informing the court of that fact, and suggesting that the certificate of the recorder of mortgages shows a large number of bonds, secured by mortgage, on the property sold, besides those sued upon by the said *Shepherd*, the plaintiff in the suit, and, in order to determine among all the bondholders and mortgage creditors, their respective claims for priority fully and finally, as well as to obtain the erasure of said mortgages, took a rule on all the mortgage creditors of the company, except the defendants in this suit, to show cause why their mortgages and privileges should not be erased, on the ground of the priority of the mortgages of himself and the defendants. He did not ask that the defendants should be cited, but he prayed for citation against *Phelps, Dodge & Co.*, one of the parties to the agreement, and entitled under it to the same rights as the plaintiff, although not a judgment creditor.

The defendants, though not cited, appeared, as well as *Phelps, Dodge & Co.*, by separate counsel, and each litigated his claim against all the other creditors, the plaintiff among the rest. Upon the separate issues thus formed, and having all the essential characteristics of a proceeding *in concurso*, a judgment was rendered by the district court, recognizing the right of the *plaintiff* to be paid by preference, the amount of his judgment on bonds of the second series, rejecting the claim of *Phelps, Dodge & Co.*, and ordering their mortgage to be erased upon

the books of the recorder. *Phelps, Dodge & Co.* and other creditors appealed, and an agreement in relation to the manner of bringing up the record, was signed by the counsel of each creditor.

On the appeal, the contestation was renewed in this court; the judgment giving a preference to the plaintiff, over *Phelps, Dodge & Co.* and other holders of bonds of the second series, was reversed. His reinscription was adjudged not to be valid, and his claim ordered to share *pro rata* with those of the other holders of the same series of bonds. 2 Ann. 100.

This judgment was in a suit instituted by the plaintiff himself. All the parties to the agreement were parties to it, and as it is *res judicata* as to *Phelps, Dodge & Co.*, who have the same rights as the plaintiff under the agreement, and it is conceded that they have only received for their claim the dividend which that judgment allows them, it is extremely difficult to avoid the conclusion, that the judgment has also finally determined the question of priority against the plaintiff, and in favor of the defendants.

The rule did not give the court to understand, that the question of priority was not open between the purchasers of the property, or that it had been waived by them. It was expressly taken in order to determine, among all the mortgage creditors, their respective claims for priority fully and finally, and represented the question as open in relation to the claim of *Phelps, Dodge & Co.* If open as to them, it must have been equally so as to all other parties to the agreement, and the judgment should have the same effect as to all.

If the plea of the thing adjudged could not, on technical grounds, be maintained, yet, as showing the interpretation put by the plaintiff, upon the agreement, the proceedings on the rule would be sufficient to bind him. He made no reservation of any rights he might have under that agreement, and, in my opinion, waived those rights by testing the claim of *Phelps, Dodge & Co.*, in all respects similar to his own, and suffering a judgment to be entered against him, in favor of his co-purchasers, on the question of priority.

I am of opinion, however, that, under the agreement, two hundred and eighty-two thousand dollars should be considered the price of the adjudication of the cotton press, and that the rights of the parties in this suit should be settled on that valuation.

It is therefore ordered, adjudged and decreed, that the judgment of the lower court be reversed, and that the rights of the parties to the agreement which forms the subject of this litigation, in the property of the press, be settled and established on the following basis: The press was purchased at $282,000. From this amount is to be deducted, 1st. The claims preferred to those of the parties, consisting of charges and privileged claims, as per tableau of distribution, $25,387 43. 2d. Those of the holders of the first series, paid in accordance with tableau, $5,516 19=$30,903 62, leaving $251,096 38. 3d. Amount of the dividend paid to the holders of the third series, not parties to the agreement, $7,028 64. Balance to be distributed between parties to the agreement, $244,067 74. Of this two hundred and sixteen thousand two hundred and eighty-one dollars and forty-nine cents, was contributed by the holders of the bonds of the first series, to wit: *R. D. Shepherd, Lizardi & Co., John Slidell* and *Mark Phillips*, under the decree as per tableau, leaving as a dividend due to *Mr. Shepherd*, as holder of bonds of the second series, twenty-seven thousand seven hundred and eighty-six dollars and twenty-five cents, instead of sixteen thousand eight hundred and fifty-five dollars and forty-five cents. And, it is further ordered, that

the dividends due on the several interests, be distributed accordingly, in the account filed, so far amended; and that the appellees pay the costs of this appeal.

PRESTON, J., concurred.

## ON AN APPLICATION FOR A RE-HEARING.

By the court:

ROST, J. The petition for a re-hearing in this case appeared to me deliberately offensive, but as my brethren were willing to act upon it, I have perused it with great care.

The perusal has not been unattended with advantage, as it has fully satisfied me of the correctness of the judgment.

The counsel regrets to be compelled to raise a direct issue of fact with the court. Any body may raise issues of fact with us, but the question on every particular case is, whether it can be fairly done; the issue of fact raised in this case, does not rest on truth, but on mere verbal criticism, to which all judicial opinions are more or less obnoxious. The opinion assumes, that the plaintiff knew his rights, because it was no where alleged or shown that he had not. But suppose that all the parties to the agreement contracted in ignorance of their legal rights as to priority. Still, under the view which the counsel takes, it was intended to benefit some of them; and after it was ascertained by the judgment of classification of the mortgages, that the plaintiff was the party protected by it, and he claimed that protection, it was true to say, that he claimed a waiver of the right of priority, made by the other parties, for his benefit; if not nominally, at least, substantially under the decree of the court; and whether he knew his rights originally or not, the rule of law invoked against him is equally applicable.

It may be true that the agreement was the work of the other parties as well as his own; but the difference between them is, that they claim nothing under it, and he does. They say that the leading object of it was the purchase of the cotton press; that this object has been attained, and they are satisfied with the position given them by the judgment of classification. If they sought to disturb that judgment, under the agreement, they would fail, for the reasons which have caused the failure of the plaintiff.

The court had not the most remote intention in applying article 1953 of the code to the case, to charge the plaintiff with concealment or bad faith. First: because we know him to be incapable of either; and, next, because we considered that if the common intent of the parties was as now represented, his adviser alone was to blame for not having placed the matter beyond doubt in the agreement, and for having caused the rank of the mortgages to be finally determined between all the creditors, without reference to it. It was reserved for the plaintiff's counsel himself, to subject his client to imputations which never entered our thoughts. We assumed, in the opinion, that the plaintiff knew that the claims of the defendants were entitled to the preference over so much of his own, as rest upon bonds of the second series.

"So far from this being the case," says the learned counsel, "at the period the agreement was entered into, it was the firm conviction, of all the parties to it, that the bonds of the second series had primed and obtained preference over

those of the first. It was not until the decree of this court, on the subject, that the parties were apprised of their legal rights." Be it so; and how does the matter stand upon this and another statement of the learned counsel. "He informs us, that the individual interest of the nominal plaintiff, himself a holder of a very large amount of bonds of the first series, is identical with that of the defendants themselves, over fifty thousand dollars of the bonds of the second series having been sent to him, and put in judgment, for account of *Messrs. Morrison & Son*, of London, who are still sole owners of the same, and the only real plaintiffs in this controversy."

The bonds which have given rise to this litigation, belong to *Morrison & Son*, and the plaintiff merely acted as their agent in making the agreement. He had the firm conviction, at the time, that those bonds are entitled to priority over his own, and yet his counsel contends that he entered into an agreement by which he betrayed the confidence placed in him, and enriched himself by renouncing, without necessity, vested rights which he was firmly convinced his principals had. I say, without necessity, because it is not only conceded, but strenuously insisted upon, that the defendants were in his power, and could impose no conditions upon him.

It does not matter what the decree of the court in those rights subsequently was, the morality of the act must be tested by the belief of the plaintiff, at the time, and his counsel cannot maintain his argument without convicting him of a flagrant breach of good faith and common honesty.

If the intention of the parties appeared doubtful, under the agreement, the high character of the plaintiff would justify the conclusion, that he never renounced rights which he could not have renounced without disgrace. But his action in the matter does not rest upon mere conjecture, as I will presently show. Reference has been made by the counsel on both sides, to the agency of the counsel of *Lizardi & Co.*, in the making of the agreement now at issue; and, as that counsel has no interest in the cause, I have not hesitated to avail myself of his statement in relation to all the occurrences of that transaction. That statement, connected with other facts of indisputable truth, has satisfied me that no trace of this business has remained on the mind of the plaintiff's counsel, and that the common intent of the parties is totally misapprehended by him.

The lands and buildings of the cotton press had cost between seven and eight hundred thousand dollars. Besides the double square actually built upon, there was a batture nearly seven hundred feet front, extending over a hundred feet towards the river, and increasing rapidly. Unimproved property had formerly been selling in that neighborhood at near $1,000 a foot front, and at the time the sale of the press took place, it was still selling for nearly double what it sells for now. It did not, at first, enter the minds of the parties to the agreement, that the property about to be taken, under execution, would not sell for more than enough to pay the debts of the company; and all the clauses in the agreement but the last, were evidently prepared, under the influence of that belief.

The defendants authorized the plaintiff to purchase the property, and to use their judgments and mortgage claims in any way he might see fit, to meet the cash payment which they anticipated he would have to make over and above the mortgages. Believing further, that by forcing a sale for cash, they would be enabled to purchase the property below its real value, they provided for the case of a resale at an advance, in which the profits would, of course, have been

ratably divided, if the price given for the property had exceeded the amount of the debts, as they supposed it would.

They considered the necessity of determining the rank of the mortgages as a remote contingency, not likely to happen, but still they made provision for it, and expressly reserved the right. Such a reservation was in all respects consistent with the preceding parts of the agreement; and the argument, that it was intended to refer to new difficulties which might arise from the agreement itself, requires no answer.

The project of agreement had progressed thus far, when it was shown to *Lizardi's* counsel, who thought it ambiguous, and asked the plaintiff and some of the defendants, "if priority was to be waived by them, why the fact was not clearly stated in the agreement?" The answer was, "that some were acting as agents, and were unwilling expressly to bind their principals in that manner." And here I find *Mr. Shepherd* where I was sure to find him; he was agent of *Morrison* and *Son*, and firmly believed that they were entitled to priority over himself. When asked why he did not waive the right of priority in their behalf, he peremptorily refused to do so, as in honor and good faith he was bound to do, under the belief he entertained.

*Lizardi's* counsel being then informed, and believing that the parties to the agreement were the only parties interested in the proceeds of the sale, suggested that he would draw up a clause which would, as he thought, prevent the question of priority from arising; and he drew up the last clause, providing, that if the property was bought for less than the whole amount of the claims of the parties to the agreement, yet, as between them, it was to be considered as having been purchased at the amount of the entire claims, so as to leave each one interested in proportion to his claim, and to avoid, as far as possible, between themselves, any question as to priority of rank.

*Mr. Shepherd* and the defendants acceded to the proposal, under the belief that the property could not sell below that limit, and that, at that price, it would be an advantageous investment.

This clause was inserted, with the implied understanding that the question of priority was not finally waived. If, as represented to *Lizardi's* counsel, the entire proceeds of the sale had gone to the parties to the agreement, it would have been avoided; but, as under a decree of this court, nearly forty thousand dollars of the price had to be applied to the payment of other debts, it is clear that it remained open, until it was finally closed by the judgment of classification.

The plaintiff was either influenced by the advice of his counsel, or by motives of delicacy, when he proposed to distribute the funds in his hands, in the manner most advantageous to himself. But I am convinced that this mode of distribution would neither be just towards him, nor in conformity with his intention in making the agreement for the purchase of the cotton press.

In conclusion, I will say that I was not at first entirely satisfied with the decision; but, with the statement of the counsel of *Lizardi*, and the new facts disclosed in the petition for a re-hearing, the case appears to me as free from difficulty as any I have ever decided; and I feel no uneasiness as to the authority which the decision is to have hereafter. Re-hearing refused.

EUSTIS, C. J. I regret to be obliged to withhold my concurrence in the elaborate opinion prepared by Judge Rost. My brethren being against granting a re-hearing, after a very elaborate review of the subject, I waive my own convictions, and concur in the refusal.